The fourth district appellate court in the state of Illinois has now convened. The honorable Robert J. Stagman presiding. Good morning, counsel. This is our case number 422-0101, Clark v. Lay, formerly known as Trenere. For the appellant, would you identify yourself, sir? Yes, my name is Don R. Shearing. Okay, thank you. And for the counsel for appellee, please identify yourself. Gerald L. Timerwalkie for the appellee. Thank you, counsel. Mr. Shearing, you may proceed. All right, if it may please the court, Mr. Timerwalkie. We have filed the appeal in this case on behalf of Mr. Clark, asking the court to reverse the trial court's ruling in regards to making the child support rearage retroactive to August the, or excuse me, to 2016. The respondent in this case filed a motion to increase child support on October the 10th, 2018. It's our position that the court erred in not making the rearage, which is discretionary with the court, but not setting the rearage to be retroactive to the filing of the petition pursuant to Section 502. The court went back to the year of 2016 that is contained on page two of her opinion or A3 filed with the court in this case. She based her ruling and authority to go prior or to go back to 2016, alleging that there had been a evidence presented at the hearing to support her to do so pursuant to 735 ILCS 5 slash 2-1401. The court stated that there was no evidence submitted, even though the respondent did not file a 1401 motion. She found that there was enough evidence and stated there wasn't any objection from the petitioner in regards to whatever evidence was presented in the case. The court referred to a court appearance in November 2015. Good morning. Is it your contention that there was insufficient evidence of fraud here for the pardon? That is one issue. Yes. All right. Does the record you provided to this court include all of the hearing dates when that evidence was provided? I believe so. Well, as I looked at the record, the only hearing date I saw was September 9th which includes information regarding the issue of visitation. If, indeed, my view of the record is correct, in the absence of these transcripts and report proceedings, doesn't this court have to presume pursuant to Fouch v. O'Brien that the trial court's ruling was correct? Yes. The main issue in the case as to why we believe or the opinion that the court should not have made it back to 2016 is that she based that ruling on 1401. The two-year statute had run when we had this case, when we heard this evidence. Not only was there not even the opportunity to present any evidence of not having fraud or not presenting evidence of fraud, that was not even an issue that was even litigated at that time. It is our position that the 1401 had two years statute had run in regards to when that 1401 could even be brought and that if you refer to the cases that have been cited, Mr. Clark was not involved in any petition to reduce or increase child support at that time. Mr. Shearing, may I interrupt you for a moment? Before we discuss the evidence in the record of fraud, do you agree that if the court finds that there was fraud on the court in obtaining that prior support order, the court does have the authority to reach back and rectify that order going forward and going backwards? If there was some obligation of the person that supposedly did not present that evidence, if there was some obligation had at that time, such as a prior order that directed him or her to file and information or whatever. Let's look at the record. We know that he received the VA benefits beginning in October of 2013, first with a lump sum payment, correct? Yes. And that lump sum payment, that didn't come out of nowhere. He had to know during the pendency of the case that he applied for those benefits, isn't that right? There's no evidence to support that. And I would refer the court also that- Well, they didn't just come out of the sky. He had to have applied for it. Yes. But this case also initiated on September the 18th, 2012. So it was an ongoing case and there was no evidence to support whether he was going to get it, how much he was going to get it, or what was going to be happening or even was approved. Right. Right. I understand. So if he had had a pending lawsuit with a possible future recovery, that wouldn't have been something, an asset that he would have had to have disclosed? It was all speculation, so I don't believe so. And when he received those back benefits, that actually went backward in time with respect to order the court had issued, correct? Yeah, I would assume so, but I assume so. And that was within 28 days of the judgment that that began? Yes. And over a year when that request for an increase in child support was first heard. When he went in in October of 2015 on his pro se petition to reduce the arrearage payment, didn't he have a duty to advise the court of his income and assets at that time? No. He wasn't in before the court on a pro se petition to reduce his payment. He was there to stop it because he had paid the $1,800, which was the arrearage that was established when the child support had been increased. The reason why he was regularly paying his child support, but the $1,800 was the arrearage based upon the court making, setting the child support, and that was the amount that was owed. That's the amount that he was supposed to pay. The $25 was being taken out of his income, and he petitioned pro se that that stop, not to be reduced or anything like that because he had paid it all. He filed the petition himself, notified his ex-wife to not show up. He appeared in court by himself, and the court agreed. We don't have a record of that, do we? We have the court order. We don't know what was represented at that time. He filed his pro se petition alleging that he had paid the money. In the order that the trial entered in November of 2015, it was stated that at a minimum, for any overpayment that he made, he was over $550 or $500. At a minimum, that would be credited towards any of his medical expenses. Counsel, is it your position that there is no continuing duty to disclose the change in income? Yes. Is it your position then that all that duty comes about only pursuant to court order? Court order, discovery, depositions, financial affidavits. If there's nothing there ordering a person to do that, he or she is not under any legal obligation to disclose any income that he has. Does it make any difference, Counsel, that this is a matter concerning child support as opposed to alimony? That is the duty of the court to look after the interests of the child? I would have to agree with you. Yes. Well, so then we have a considerable sum of additional money, lump sum payment, and then payments to be made over months and also reduction of elimination of his property tax. Under your response you just made, even though this would affect child support payments, and one should know that, he's under no obligation to disclose that to the court on the other side. And if they discover it, good. But if they don't, that's just fine. And meanwhile, the child involved gets no benefit from that additional payment. Is that your position? Well, he did disclose it. He didn't volunteer this information any time, did he? Eventually he did, yes. He answered the discovery and he had his financial affidavit. That was years later when the matter had, years had passed, and it's the, really, those years that are the subject of the court's order, are they not? You're saying that prior to October the 10th, 2018, when he started receiving his benefits, if he disclosed that, he did not. He was not, but again, I think if you're... Your position is he was under no obligation to do so, even though it would affect child support payments. Yes, it is. One other thing about this, the trial court's decision in this case, essentially, and I think explicitly was based upon the trial court's finding that your client committed a fraud upon the court, is it not? I know you challenged that finding, but that was the court's finding, was it not? That it was his finding that there was fraud. Okay, well, now, pausing at that point and going back to Justice Zeno's question that you never answered, how do we know that at the hearings that the trial court conducted, for which we have no record, the trial court did not receive evidence regarding the alleged fraud committed by your client or make findings, which would be helpful to this court to understand why the trial court believed your client committed a fraud? We don't have any of those findings, do we? I don't... There weren't any findings. Well, see, that's the trouble. We have to take your word for that, as opposed to you're providing us with a record of hearings that the trial court conducted, where we could satisfy ourselves whether or not the court ever made that statement. Isn't that correct? I... There isn't. That issue was not even brought... So you mean the trial court made its findings that your client committed fraud out of thin air. There was no evidence ever presented, no discussion ever by the court. Is that what you're telling us? We have the exhibits that show that he was receiving... No, that's not my question, counsel. My question is, the trial court, according to you, made these findings out of thin air. They were never part of any hearing or discussion by the trial court with the parties present. Is that what you're telling us? You mean the 1401 motion? I mean, any discussion by the trial court justifying its finding that your client committed fraud upon the court. You're telling us there's nothing in any of these records of the hearings that would have explained that? I don't know how much of it would it be explained. There was hearings, there was discussions, the discovery was first answered, and he did not disclose, we did not... Well, see, the rule, as Justice Zito said, from the Supreme Court is that if the trial court conducts hearings and you don't provide the record of those hearings, then we can presume that the trial court heard evidence and made findings that would be supportive of the matter being raised on appeal. Isn't that the rule? And why shouldn't it apply here? I assume so. But again, the issue, I believe, is whether or not the 1401 was filed within the two years. How do we address that? I mean, that's in the record, that's what the court put into her findings and rulings. Can I ask you, counsel, about some things that are in the record? I think you suggested that in the 2018-2019 timeframe, that these were disclosed, these payments were disclosed on the affidavit. Didn't he, in fact, disclose that his income was from earnings and did not initially disclose the disability benefits? Yes. Right. So at that point, he's making an affirmative misrepresentation to the court. And he testified that he was of the opinion, since this was a disability non-tax bill, that he didn't have to include that as income. He was represented by counsel at that point, correct? Yes, me. And don't you have an obligation to report to your duty of candor to the tribunal? Shouldn't this have been on his affidavit? I didn't know about it. So your clearance wasn't high enough to be told by your client of this windfall that he received? No, he did not tell me any of that. He also didn't list the bank account that he had set up separate for that income. Is that right? Originally, he did not disclose that, correct? And he also affirmatively misrepresented that he was paying taxes on his real estate when, in fact, he wasn't. Is that true? I don't know if that's true or not. In other words, a period of time after that, that he hadn't paid taxes because he didn't pay taxes because of the provision in the code for a veteran. Counsel, I'm not sure if that's true. It's moving quickly. I'd like to just ask a question regarding something else, and that is the court stated that child support was to be recalculated based on your client's VA benefits only. And you indicated that that wasn't clear to petitioner. Would it have been necessary for petitioner to file a motion to clarify at that point or submit his own calculations in order to preserve this claim for error for us to review that? Yes, I don't think. Yes. But that wasn't done. Correct. So have you not forfeited your right to challenge the calculations respondent Yes. A trial court. Yes. So you can see that. Yes. Okay. Thank you. Mr. Sharon, can I ask why the trial court would have chosen retroactive to 2016 as opposed to 2015 when that order was vacated? And there seems to be no provision covering the gap between those two dates. I can't answer that. It wasn't addressed. The court did speak of 2015 from the 5th of November, I believe, and made it to 2016. Even whether or not it is to be retroactive is discretionary with the court. So I assume the court picked that date of January the 1st. Mr. Timmerwalke prepared the calculation. It's generally our following here in our circuit that who prevails files or prepares the order and he did that. He and I had talked about that and he was doing that from the information from the evidence that was presented. So I can't answer. I think it was just the date that the court picked out of discretion. Thank you. Thank you. Anything for the council? No, I'm sorry. No. Okay. If you see no further questions, then at this time, we'll give Mr. Timmerwalke. Is that okay? We'll give Mr. Timmerwalke an opportunity to argue on behalf of the athlete. Thank you. Good morning, Justices, Mr. Shearing. To answer that last question about how the judge told me to calculate the figures, I thought it was very clear. What she did is when my client filed her petition to modify an increased support in 2018, she said from that date forward, you can consider his earned income and the VA. But before that time, we're going to start in 2016 and to that date when she filed her petition, you keep the regular amount of $125 a week, but add on the VA. So it was a lot of work doing it. We submitted a very detailed motion with the in line with what the court said. Why 2016? Why are we going back to 2016 as opposed to 2015 when there was arguably the beginning of the fraudulent conduct? I'm just about to answer that. The reason it was 2016 was at my client's request because the interesting thing about this looked in the local newspaper where they show change of assessments. She picked this up after our 2018 petition had been pending, and she didn't catch it, I believe, until 2019. This case went to trial 2221. So it was in 19 that we started focusing in on our after we saw that the assessment of over $6,000 for the real estate that the petitioner lived in had gone away. We knew that he was a vet, and we knew at that time that he'd gone over the 70%. So I investigated and found out in 2015, he did pay real estate taxes. So that's why my client asked me to start in 2016 because it was after that date that his real estate taxes went to zero because he got over the 70%. So my client very well could have told the judge she wanted to go all the way back to the 2013 order as you just said. This money didn't just fall out of the sky. He knew he had that pending. VA claims are not done like the day you file them. They take a long time, and he never did. One of the things we wanted to get to prove that point is he never would produce the letter that he got with the initial VA award. You don't get the money until later, sometimes months, sometimes years later, but the VA award letter had to come well before the child support amount was set in September of 2013. Judge Hens did exactly the correct thing here. Quite frankly, Mr. Shearing has been practicing a few more years than me, and I'm at 46, and I think he's at 48, but I've never seen someone go so far to try to hide an asset as what petitioner did in this case. Judge Hens, as the case developed, and we've laid out all the things in our brief that the petitioner tried to hide. One of the clear things on the financial affidavit, you have social security, social security disability, and then you have disability other than social security disability. He never answered that knowing he was receiving a very generous monthly stipend each and every month, and he didn't put it in there. Now, how he could miss that, I don't know. He also answered interrogatories. He set up a bank account, and his answer, well, his answer, I didn't think I had to disclose it because it was disability. He still would have had to disclose it under his sworn financial affidavit. Then he didn't produce any bank records on it, and my client, again, and it's one of the exhibits, found there was a transfer from an account at a bank where he did disclose records from another account in that. That's when we moved forward, and with requests to produce, and said produce this other account. Finally, then we saw it was in his wife's name, and his answer to that when he testified, which I'm sure Judge Hens wasn't happy with, oh, I only thought that I would have to so he's shooting money to his wife's name. That's his VA disability, and he didn't feel he had to report it to the court. This is a case that if you adopt the argument here that Mr. Shearing's putting out, people can lie. They can misrepresentate their misrepresentation of their assets. They can hide assets, and then, oh, you get by two years, you've lost it because you didn't file a 1401, and that's not what the law is. We've cited our three cases saying the courts can go back to when they determined the fraud, and that's what Judge Hens did in this case. I think that we've clearly laid out all the ways he hit on pages seven and eight of our brief. I believe that the arguments here would basically say you can do not only civil misrepresentation, but these things approach criminal when you're signing sworn financial affidavits, and you know you have an asset, and you don't disclose it. As long as you like you said, this is not something that my client wants for her. It's something that the child should have enjoyed, and it's something that the child should have had available, so it's taking money from your own child that you duly owe. That's all I have as far as my argument. I'll be glad to answer any questions if you have any questions, Justices. I have a question, Counsel. There's been a lot of discussion about 21401 and the two-year limitation that is present in the statute. If you or the trial court were limited to applying that section to the claims of fraud in this case, would any 21401 petition be untimely? In this case, are you saying or in any case? In this case. In this case, we didn't have the No, let me be more clear. Let's assume that whenever this matter first, you first became aware of it, had the time in which you could file a 21401 petition expired? I believe that it was finally disclosed in 2000. Early 2020 is when we first had the information from the mother, so it would have only gone back to the filing of our original petition. Our 2018 petition for increase, so it really wouldn't have benefited. So that's a slide one. Yeah, could I have done one? Yes, I could have done one on it, but I would have had to attack that the original order where it was set 125,000 in September of 2013. And that was way beyond that. And for instance, the lump sum payment would not have been within the two years, would it? No. Okay. Anything further, Counsel? No, Your Honor. Okay. Mr. Sherry? One thing, a couple of things. In that account that he had, it was not just in his wife's name, it was in both of their names, first of all. And then I still rely upon the two years and what I believe Mr. Timmerwock is asking is that the court not follow the two-year period in regards to the filing of a 1401, which the court put into its order. So I don't know how we get around that. Mr. Clark, as stated in the judgment of the court, did sanction him, ordered him to pay $1,000 just on that issue for not disclosing the monies that he was receiving after the discovery was propounded and after the financial affidavit. So there were some imposition of sanctions in regards to attorney fees of $1,000 incurred by Ms. Clark. So that's all I have. Okay. Thank you, Counsel. The court will take this matter under advisement, issue a decision in due course, and will stand in recess.